**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| INTERNATIONAL INTERESTS, LP AND KILDARE LLC, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-11-0580 |
| MT. HAWLEY INSURANCE COMPANY | § § | |
| Defendant. | § § | |

**MEMORANDUM AND OPINION**

This is an insurance dispute arising out of property damage from a September 2008 hurricane. The dispute is over the current tax lienholder's claim to the insurance proceeds. Mt. Hawley Insurance Company issued the policy in early 2008 to CFP Gess SPE, LLC, ("CFP"). CFP obtained the policy after purchasing the property at a foreclosure sale in February 2008. CFP foreclosed pursuant to the mortgage and deed of trust it had obtained in 2005 from the then-property owner, 6426 Gess, Ltd.

In 2007, 6425 Gess, Ltd. owed taxes on the property. To pay the taxes, 6425 Gess borrowed $963,511.22 from Tax Ease Funding, LP, secured by a note and deed of trust. After several assignments, International Interests became the holder of the 2007 note and deed of trust as well as the recorded tax lien. The deed of trust included a provision requiring 6524 Gess to obtain property insurance and name Tax Ease as a loss payee. When CFP purchased the property in 2008, it bought the insurance policy at issue from Mt. Hawley but did not name the Tax Ease as a loss payee.

In September 2008, the property was damaged in Hurricane Ike. CFP sold the property to Kildare LLC in 2009; Tax Ease assigned the 2007 note secured by the deed of trust to an entity that subsequently assigned it to International. The 2007 note and tax lien remain unpaid.

Mt. Hawley moved for summary judgment on the claims asserted by both Kildare and International. Mt. Hawley contends that International has no standing to assert a claim under the policy issued to CFP. (Docket Entry No. 16). International asserts that as the current holder of the note and tax lien, it is entitled to enforce the obligations in the 2007 note and deed of trust. International seeks to enforce against CFP the deed-of-trust covenant requiring the property owner to obtain property insurance and to name the tax-lien beneficiary as a loss payee. The issue is whether this covenant binds CFP — the subsequent owner — and Mt. Hawley, the insurer that issued the policy to CFP.

This court previously granted Mt. Hawley's motion for summary judgment on the claims asserted by the present property owner, Kildare. Based on the pleadings; the motion, response, reply, the parties' supplemental briefing; the arguments of counsel; and the relevant law, this court now grants Mt. Hawley's motion for summary judgment on the claims asserted by International. Because this resolves the remaining issues, final judgment is entered by separate order.

The reasons for the rulings are explained below.

## I.      Background

The relevant facts are largely undisputed. In 2005, 6425 Gess owned The Carlingford Apartments (the "Property") in Houston, Texas. 6425 Gess executed a deed of trust in favor of the mortgage holder, CFP. (Docket Entry Nos. 18 at 4; 16 at 3). On June 29, 2007, 6425 Gess obtained a $963,511.22 loan from Tax Ease Funding, LP for property taxes. 6425 Gess and Tax Ease

executed a promissory note secured by a deed of trust and an Assignment of Leases and Rents. (Docket Entry No. 16, Exs. 3, 4). In the 2007 deed of trust, 6425 Gess agreed to make Tax Ease a loss payee on the insurance policy covering the Property. The relevant part of the 2007 deed of trust stated:

> <u>Insurance Proceeds</u>. Grantor shall make Beneficiary a Loss Payee on its insurance policy on the Mortgaged Property. If the Mortgaged Property shall be damaged or destroyed, in whole or in part, by fire or other casualty (a "Casualty"), Grantor shall give prompt notice thereof to Beneficiary. Following the occurrence of a Casualty, Beneficiary,[sic] shall in its sole discretion apply the insurance proceeds as payment on the indebtedness, without prepayment penalty, or allow the Grantor to restore the Mortgaged Property.

(Docket Entry No. 16, Ex. 4 at 4-5). "Beneficiary" is defined as "Tax Ease Funding, LP." (Id. at 2).

In February 2008, CFP foreclosed on the 2005 deed of trust and purchased the Property at the foreclosure sale. (Docket Entry Nos. 18 at 4-5; 16 at 3). CFP obtained insurance on the Property from Mt. Hawley, which issued CFP Commercial Property Policy No. MCP0145440 with effective dates of February 11, 2008 to February 11, 2009. CFP did not name Tax Ease as a loss payee. (Docket Entry No. 16, Ex. 1-A).

Around October 1, 2008, CFP notified Mt. Hawley of a claim for property damages caused by Hurricane Ike in September 2008. (Docket Entry No. 16, Ex. 1 at 1). On December 31, 2008, Tax Ease assigned the promissory note secured by the 2007 deed of trust to TRFP Limited Partnership. (Docket Entry No. 16, Ex. 5). CFP was neither a party to the TRFP assignment nor mentioned in that document.

After the Mt. Hawley policy period ended, TRFP initiated foreclosure proceedings based on CFP's failure to pay property taxes. In April 2009, CFP and TRFP entered into a Forbearance Agreement, under which TRFP agreed to give CFP additional time to pay the promissory note

3

balance.  (Docket Entry No. 16, Ex. 8).  The Forbearance Agreement contains the following clause

preserving TRFP's rights and CFP's obligations set out in the loan documents 6425 Gess and Tax

Ease had executed:

> No Modification. The agreements of TRFP pursuant to this
> Agreement shall not be construed to waive or modify any of TRFP's
> rights under the Loan Documents, nor any of the obligations of CFP
> thereunder. . . .CFP and TRFP hereby agree that the Tax Liens, and
> all other rights, benefits and privileges of TRFP pursuant to the Loan
> Documents, are hereby ratified and confirmed, and are not waived,
> and that all terms of the Loan Documents are and shall remain in full
> force and effect.

(Id. at 4).

On May 26, 2009, CFP sold the Property to Kildare.  CFP executed a document stating that

it was assigning Kildare the right to pursue CFP's claims under the insurance policy covering the

Property when the hurricane damage occurred.  (Docket Entry No. 16, Ex. 1-A).  On July 6, 2009,

TRFP assigned the promissory note secured by the 2007 deed of trust to Newport Coast Investment

Limited Partnership, which in turn assigned the note and deed of trust to International.  (Docket

Entry No. 16, Exs. 6, 7).  International is the current holder of the tax lien and note.  According to

International, the amount owed on the unpaid tax lien is approximately $3,000,000.  (Docket Entry

No. 18 at 1).

This memorandum and opinion addresses International's claim to the insurance proceeds.

## II.    The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving

party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "The movant bears the

burden of identifying those portions of the record it believes demonstrate the absence of a genuine

issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non moving

party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

**III**.    **Analysis**

As noted, the relevant facts are undisputed.  Resolving Mt. Hawley's summary judgment motion turns on the legal question of whether the covenant to insure contained in 6425 Gess's 2007 note and deed of trust with Tax Ease is enforceable as an obligation binding on the subsequent owner, CFP, and the issuer of the insurance it obtained on the property, Mt. Hawley.  International offers several theories in support of its position that the covenant is enforceable.

International first argues that the covenant between 6425 Gess, as the Property owner, and Tax Ease, as the tax-lien holder, to insure the Property and to name the "Beneficiary," defined as Tax Ease, ran with the land and therefore binds CFP as a subsequent owner.  (Docket Entry No. 18 at 7-10).  Mt. Hawley asserts that under Texas law, the covenant to insure is a personal, not a real, covenant.  (Docket Entry Nos. 23 at 3-6, 30 at 1-2).

In Texas, a covenant runs with the land when: (1) it touches and concerns the land; (2) relates to a thing in existence or specifically binds the parties and their assigns; (3) is intended by the original parties to run with the land; and (4) when the successor to the burden has notice.  *Inwood North Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987).  The disputed element is whether the covenant to insure satisfies the "touches and concerns the land" requirement.

A covenant will "touch and concern" the land if it affects the "nature, quality or value of the thing demised, independently of collateral circumstances, or if it affects the mode of enjoying it." *In re El Paso Refinery, LP*, 302 F.3d 343, 356 (5th Cir. 2002) (quoting *Westland Oil Dev. Corp. v.*

6

*Gulf Oil Corp.*, 637 S.W.2d 903, 911 (Tex. 1982)).  To decide this question, Texas cases generally look to whether an agreement benefits or burdens the property.  *See id.* at 356 ("Traditional Texas cases have employed a benefit/burden analysis when determining whether a covenant touches and concerns the land."); *Homsey v. University Gardens Racquet Club*, 730 S.W.2d 763, 764 (Tex. App.—El Paso 1987, writ ref'd n.r.e.) ("A chief consideration of a covenant 'touching and concerning the land' is whether it is so related to the land as to enhance its value and confer benefit upon it.") (citation omitted); *Prochemco, Inc. v. Clajon Gas Co.*, 555 S.W.2d 189, 191 (Tex. Civ. App.—El Paso 1977, writ ref'd n.r.e) (applying the same standard to a gas contract); s*ee also* RESTATEMENT (FIRST) OF PROP. § 537 cmt. f (1944) ("For a promise to run with the land of the promisor it is not enough that the performance of the promise operates to benefit either the promisor or the beneficiary of the promise in the use of his land but it must operate to benefit him in the physical use of his land.")*.  But see Wimberly v. Lone Star Gas Co.*, 818 S.W.2d 868, 871 (Tex. App.—Fort Worth 1991, pet. denied) (finding that there is no benefit requirement in the definition of "touches and concerns").  By contrast, "[i]n the absence of proof that a restriction was imposed for the benefit of other land, it is construed as a personal covenant merely with the grantor." *Davis v. Skipper*, 83 S.W.2d 318, 322 (Tex. Comm'n App. 1935, op. adopted).

Applying these precedents to the undisputed facts leads to the conclusion that, as a matter of law, the covenant to insure at issue in this case is a personal covenant because it neither benefits nor burdens the property.  The covenant was designed to secure a personal benefit to Tax Ease, the holder of the 2007 note and deed of trust securing the tax lien — insurance if the Property was damaged.  Under Texas law, "a covenant to insure for the benefit of the mortgagee is a personal covenant, not running with the land." *Huey v. Ewell*, 55 S.W. 606, 608 (Tex. Civ. App.—Dallas

1900, no writ); *cf. Cumis Ins. Soc., Inc. v. Republic Nat. Bank of Dallas,* 480 S.W.2d 762, 765 (Tex. Civ. App.—Dallas 1972, writ ref. n.r.e.) ("Insurance on property is not an incident of the thing insured, but a personal contract of indemnity to the person insured for his loss.").

The Texas cases are consistent with the majority of cases decided by other state courts and by federal courts applying the law of other states. Like the Texas courts, other state and federal courts have generally classified covenants to insure as personal covenants. *See, e.g.*, *Farmers' Loan & Trust Co v. Penn Plate Glass Co.*, 186 U.S. 434, 453 (1902) (applying Pennsylvania law to hold that covenant to insure with original owner did not bind the defendants, who had purchased the land at a foreclosure sale); *Rollman Corp. v. Goode*, 400 A.2d 968, 970 (Vt. 1979) ("We hold that these supposed covenants do not run with the land and cannot form the basis for a recovery of the insurance proceeds involved here."); *Burton v. Chesapeake Box & Lumber Corp.*, 57 S.E.2d 904, 908 (Va. 1950) ("In a bare covenant to insure without a reciprocal obligation from the lessor to restore the premises in the event of fire, the assignee receives no benefit from the covenant"); *Spillane v. Yarmalowicz*, 147 N.E. 571, 572 (Mass. 1925) ("The presiding judge rightly ruled that the covenant to insure on the part of the original mortgagor did not run with the land."); *cf. Voight v. Southern Ohio Sav. Bank & Trust Co.*, 25 N.E.2d 304 (Ohio Ct. App. 1939) (holding that a covenant to insure runs with the land when coupled with a requirement to rebuild). *But see Northern Trust Co. v. Snyder*, 76 F. 34 (7th Cir. 1896) (holding that including an option to rebuild is sufficient for a covenant to insure to run with the land).

The language of the covenant between 2465 Gess and Tax Ease provides further support for this conclusion. The covenant permits Tax Ease to decide whether it will use any insurance proceeds it obtained because of Property damage either to benefit itself by paying down the Property

8

tax debt or to benefit the land by repairing the Property damage. (Docket Entry No. 16, Ex. 4 at 4-5 ("Following the occurrence of a Casualty, Beneficiary,[sic] shall in its sole discretion apply the insurance proceeds as payment on the indebtedness, without prepayment penalty, or allow the Grantor to restore the Mortgaged Property.")). The covenant by 6425 Gess to obtain insurance and make Tax Ease a loss payee on the policy did not impose an obligation on Tax Ease to use insurance proceeds to benefit the property.

The fact that the covenant to insure was contained in a deed of trust obtained to secure a tax lien does not alter this analysis. Although all parts of the deed must be considered as a whole and harmonized, Texas courts considering whether a covenant is personal or not examine the individual covenant provisions, considered in the context of the overall document. *See, e.g.*, *Montford v. Trek Resources, Inc*., 198 S.W.3d 344 (Tex. App.—Eastland 2006, no pet.) (considering the specific language to determine whether a deed obligation to furnish fresh water was personal or real). International's first basis for arguing that the insurance obligation ran with the land is unpersuasive.

In the alternative, International argues that the obligation to insure contained in the 2007 deed of trust is a personal covenant that is nonetheless binding on CFP — and enforceable against Mt. Hawley — as an equitable servitude or obligation on a subsequent property owner. (Docket Entry Nos. 18 at 10-13, 29 at 1-4). International correctly notes that a property owner's promise operates as an equitable obligation or servitude that binds a subsequent purchaser or owner only when the purchase or acquisition is with notice of that promise. But a number of the cases that International cites also state the additional requirement that the promise must respect the use and enjoyment of the land to be effective against successor landowners. *See Clear Lake City Water Authority v. Clear Lake Utilities Co.*, 549 S.W.2d 385, 388 (Tex. 1977) ("[T]he doctrine of equitable

9

obligation or servitude . . . has application only to promises respecting the use of land.") (citations omitted); *Frey v. DeCordova Bend Estates Owners Ass'n*, 632 S.W.2d 877, 879 (Tex. App.—Fort Worth, 1982), *aff'd* 647 S.W.2d 246 (Tex. 1983) ("A covenant, personal in form, may be real if in fact it is for the benefit of the grantor's land."); *Montgomery v. Creager*, 22 S.W.2d 463, 466 (Tex. Civ. App.—Eastland 1929, no writ) ("It is true that equity recognizes a kind of covenants which do not run with land, but are nevertheless binding upon subsequent owners of property who acquire same with notice.  But even that kind of covenant must relate to or concern the land or its use or enjoyment.") (citations omitted); *see also* RESTATEMENT (FIRST) OF PROP. § 539 (1944) ("The equitable interest resulting solely from the enforceability in equity of a promise *respecting the use of land* is effective against the successors in title or possession of the promisor except as they are entitled to the protection of the recording acts or of the defense of bona fide purchase for value.") (emphasis added).  As discussed above, the covenant to insure at issue here provides a benefit to the tax-lien holder, but the covenant does not relate to either the use or enjoyment of the property.[1]

The balance of the cases that International relies on to support its equitable servitude argument are inapposite.  Some of the cases concern restrictions on the use of land that — unlike this case — meet the requirements for equitable servitudes.  *See Collum v. Neuhoff*, 507 S.W.2d 920 (Tex. Civ. App.—Dallas 1974, no writ) (concerning a suit brought to enjoin property owners from violating a fence setback restriction in constructing a swimming pool); *Cummings v. Williams Production-Gulf Coast Co.,L.P.*, 2007 WL 172536 (E.D. Tex. Jan. 18, 2007) (concerning an

---

[1]  The result likely would be different under the Third Restatement of Property.  *See generally* RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES. The Restatement liberalizes restrictions on property covenants, abandons the "touch and concern" requirement, and abolishes the distinction between real covenants and equitable servitudes, which is based on the archaic division of law and equity.  But Texas courts have not endorsed this approach, instead continuing to follow the First Restatement.  *See In re: El Paso Refinery, LP*, 302 F.3d 343, 356 n. 19 (5th Cir. 2002) ("Texas has not yet adopted [the Third Restatement's] approach.").

agreement to build pipelines, equipment, and other facilities servicing wells); *Dellaugher v. Hargrove*, 40 S.W.2d 253 (Tex. Civ. App. 1931, no writ) (concerning a deed restriction prohibiting the construction of houses valued at less than $1,800). Other cases address the validity of personal covenants as opposed to the effects of such covenants on successive property owners. *See, e.g.*, *Tarrant Appraisal Dist. v. Colonial Country Club*, 767 S.W.2d 230, 235 (Tex. App.—Fort Worth 1989, writ denied). One case International cites, *Howell v. Murray Mortg.* Co., 890 S.W.2d 78 (Tex. App.—Amarillo 1994, writ denied), does support its argument. *Howell* held that a due-on-sale clause is binding against successive property owners even when the clause did not fulfill the legal requirements for a real covenant or an equitable servitude. *Id.* at 83-84. *Howell* cites no authority for the holding, which appears contrary to Texas law. *See, e.g.*, *Clear Lake City Water Authority*, 549 S.W.2d at 388. This case is an insufficient basis for the relief International seeks.

International's third argument is that CFP ratified the binding effect of the covenant by signing the April 2009 Forbearance Agreement with TRFP. (Docket Entry No. 18 at 13-15). International points to the Forbearance Agreement's "no modification" provision language stating that "the rights, benefits and privileges of TRFP pursuant to the Loan Documents, are hereby ratified and confirmed, and are not waived, and that all terms of the Loan Documents are and shall remain in full force and effect." (Docket Entry No. 16, Ex. 8 at 4).

Under Texas law, "[t]he elements of ratification are: (1) approval by act, word, or conduct; (2) with full knowledge of the facts of the earlier act; and (3) with the intention of giving validity to the earlier act." *Motel Enterprises, Inc. v. Nobani*, 784 S.W.2d 545, 547 (Tex. App.—Houston [1st Dist.] 1990, no writ). Texas law requires interpreting a written contract based on the parties' intent. *See Jim Walter Homes, Inc. v. Schuenemann*, 668 S.W.2d 324, 330 (Tex. 1984). "Language

should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated." *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987) (citing *Fox v. Thoreson*, 398 S.W.2d 88, 92 (Tex. 1966)). "[I]n the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls." *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968).

The most reasonable interpretation of the "no modification" provision is that the Forbearance Agreement preserved all of the rights already possessed by TRFP but did not create new or additional rights. *See Motel Enterprises, Inc.*, 784 S.W.2d at 547 (interpreting a similar provision found in a special warranty conveyance). While it owned the property, 6425 Gess was required to purchase an insurance policy and name Tax Ease as the loss payee. This obligation was personal to 6425 Gess, and the 2007 Note and deed of trust did not impose this obligation on subsequent owners. The 2009 Forbearance Agreement did not impose this new obligation on CFP.

International's fourth and fifth arguments are based on the equitable-lien and third-party beneficiary doctrines. Both arguments depend on concluding that under Texas law, the covenant is binding on, and enforceable against, CFP. According to the equitable-lien doctrine, when a mortgagor fails to satisfy a contractual obligation to obtain property insurance listing the mortgagee as beneficiary, "equity will treat the policy as having contained the loss payable provision and entitle the mortgagee to recover under the policy." *U.S. Nat'l Bank Ass'n v. Safeguard Ins. Co.*, 422 F. Supp. 2d 698, 704 (N.D. Tex. 2006) (quoting *Beneficial Standard Life Ins. Co. v. Trinity Nat'l Bank*, 763 S.W.2d 52, 55 (Tex. App.—Dallas 1988, writ denied)). The equitable-lien doctrine does not apply here because CFP did not agree to make International or its predecessors a loss payee on its insurance policy with Mt. Hawley.

12

The third-party beneficiary argument is similarly unavailing. International argues that even though CFP did not make it a loss payee on the policy it obtained from Mt. Hawley, under the third-party beneficiary doctrine, International is a creditor-beneficiary of the policy. (Docket Entry No. 18 at 16-18). A party is a creditor-beneficiary if "performance will satisfy an actual or asserted duty of the promisee to the beneficiary, such as an indebtedness, contractual obligation, or other legally enforceable commitment to the third party, and the promisee must intend that the beneficiary will have the right to enforce the contract." *Allan v. Nersesova*, 307 S.W.3d 564, 571 (Tex. App.—Dallas 2010, no pet.). There is a presumption against third-party-beneficiary status. *See South Texas Water Authority v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007). This court has found that Mt. Hawley has no contractual obligation, duty, or other legally enforceable commitment, either on its own or through CFP, to pay insurance proceeds to International. International has neither presented nor identified summary judgment evidence raising a disputed fact issue material to determining that neither Mt. Hawley nor CFP intended to benefit International. The third-party beneficiary doctrine is inapplicable.

In summary, International's arguments for enforcing the obligation the previous tax-lien holder, Tax Ease, obtained from the previous property owner, 6425 Gess, against the subsequent property owner, CFP, and its insurer, Mt. Hawley, fail as a matter of law. Mt. Hawley is entitled to summary judgment on the remaining claims.

**IV.    Conclusion**

Mt. Hawley's motion for summary judgment, (Docket Entry No. 16), is granted.  Final judgment is entered by separate order.

SIGNED on August 29, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

14