IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| INTERNATIONAL INTERESTS, LP AND KILDARE LLC, § § § | |
| Plaintiffs, § § | |
| VS. § § | |
| MT. HAWLEY INSURANCE COMPANY § § Defendant, § § | CIVIL ACTION NO. H-11-0580 |
| VS. § § | |
| CFP GESS SPE, LLC § § | |
| Intervenor. § § | |

**MEMORANDUM AND ORDER**

This insurance dispute arises out of September 2008 hurricane damage to an apartment complex in Houston, Texas. The insurer moves for summary judgment that the policyholder has no claim to the insurance proceeds because it assigned its right to pursue the claim and because it is judicially estopped from asserting its claims. (Docket Entry No. 53). Based on the pleadings; the motion, response, reply, and the parties' supplemental briefing; the arguments of counsel; and the relevant law, this court grants the insurer's motion to supplement the summary-judgment record, (Docket Entry No. 121), and denies the insurer's motion for summary judgment on the insured's claims. Because the summary-judgment record is sufficient for the court to decide the issues on the grounds the insurer presented in its motion, the insured's motion to extend the time to file additional evidence in opposition to the motion is denied as moot. (Docket Entry No. 143).

The reasons for the rulings are explained below.

1

I. **Background**

USA Commercial Mortgage Company ("USACM"), a financial-services company, recruited individual investors (called "direct lenders") to pool their money and offer mortgage loans on commercial properties. The direct lenders, who owned the loans, contracted with USACM to service them. (Docket Entry No. 55, Ex. B at 12). Two hundred and eighty direct lenders invested in a mortgage on the Carlingford Apartments in Houston, Texas. Each direct lender signed a Loan Servicing Agreement with USACM. (*Id.*). USCAM filed for bankruptcy in 2006. Compass Partner, a private equity firm, subsequently purchased the right to service the direct lenders' loans. (Docket Entry No. 53, Ex. 6).

A dispute arose between Compass and the direct lenders over servicing fees. (Docket Entry No. 53, Ex. 2). A Nevada district court found that Compass was a "fiduciary of the direct lenders" and authorized it to create Special Purpose Entities ("SPEs") to hold title to each property Compass foreclosed on in trust for the direct lenders. (Docket Entry No. 53, Ex. 2-2). After a foreclosure, Compass would hold an interest in that property proportional to its claim against the direct lenders for outstanding service fees. (Docket Entry No. 55, Ex. B).

CFP Gess SPE, LLC, ("CFP") was an SPE created when Compass foreclosed on the Carlingford Apartments in February 2008. (Docket Entry No. 53, Ex. 7). The Loan Servicing Agreements and Nevada law required that 51% of the direct lenders approve any sale of a property held by an SPE. (Docket Entry Nos. 53, Ex. 4; 55 at 14, Ex. B-1).

Compass had borrowed money from an entity called Silar to purchase the USACM servicing rights, using the Loan Servicing Agreements as collateral. Compass defaulted on its loan to Silar, and Silar foreclosed on the Loan Servicing Agreements. Silar formed an entity called Asset Resolution and assigned it the Loan Servicing Agreements. As the successor to Compass, Asset

Resolution became the sole manager and member of CFP, holding its assets in trust for the direct lenders. (Docket Entry No. 55 at 15). Asset Resolution attempted to sell the property to Kildare in 2009. As part of the sale, the insurance claim was assigned to Kildare. (Docket Entry No. 55 at 16).

The Nevada district court, which had retained jurisdiction over the underlying litigation between the direct lenders and the loan servicers, ordered the direct lenders to vote on the sale of the property to Kildare. The direct lenders did not approve the sale. (Docket Entry No. 55, Ex. B). Instead, the direct lenders organized a new company called 6425 Gess and, with Wicklow LLC, created a joint venture called Carlingford Apartments, LLC. (Docket Entry No. 55, Ex. B). The direct lenders sold the Carlingford Apartments to Carlingford Apartments, LLC in exchange for an interest in 6425 Gess, a part owner of the property. (Docket Entry No. 55 at 18, Ex. B). This sale terminated Asset Resolution's servicing interest in CFP. The Nevada district court approved the sale in what was called the "Gess Math" ruling. (Docket Entry 53, Ex. 2). Asset Resolution refused to sign the documents transferring title of the Carlingford Apartments from CFP to 6425 Gess. (Docket Entry Nos. 53, Ex. 8; 55 at 18). In August 2009, the Nevada district court appointed another individual to execute the sale documents. (Docket Entry No. 38, Ex. 3).

In October 2009, Asset Resolution filed Chapter 11 bankruptcy petitions in a New York bankruptcy court for each of the SPEs it managed, including CFP. (Docket Entry Nos. 53 at 12; 55 at 19). In filing the summary of schedules for CFP in December 2009, Asset Resolutions did not list the insurance claim as one of CFP's assets. (Docket Entry No. 53 at 9, Ex. 3). The direct lenders, acting through 6425 Gess, intervened and moved to transfer the bankruptcy proceeding to Nevada. (Docket Entry No. 55, Ex. B). The motion was granted. The Nevada bankruptcy court ruled that Asset Resolution's filing of the bankruptcy petitions was "frivolous" and held that the "assets being held in trust for the direct lenders by [CFP] . . . were not property of [CFP's] estate."

(Docket Entry No. 55, Exs. C and E). In January 2010, the Nevada bankruptcy court converted the Chapter 11 bankruptcy to a Chapter 7 bankruptcy. (Docket Entry No. 53, Ex. 4).

One day after this court granted summary judgment against Kildare's claims, but before this court granted summary judgment against International's claims, the direct lenders, acting through 6425 Gess, moved to dismiss CFP's bankruptcy case. (Docket Entry Nos. 53, at 13; 55, Ex. B). In its motion to dismiss, 6425 Gess stated:

> "International, Kildare, and 6425 Gess . . . reached an agreement to cooperatively and collectively pursue the lawsuit against Mt. Hawley currently pending in [this court] . . . This relief is sought because there is nothing in the bankruptcy estate of CFP Gess for this Court to adjudicate. The apartments are owned by Carlingford Apartments, LLC, and have been since August 2009, and thus were never part of the CFP Gess bankruptcy estate. Likewise, by virtue of the assignment to Kildare in May 2009, the insurance claim and any proceeds therefrom that may be recovered from Mt. Hawley are not and never were a part of the CFP Gess bankruptcy estate."

(Docket Entry No. 53, Ex. 5). The bankruptcy court dismissed CFP's Chapter 7 bankruptcy proceeding. (Docket Entry No. 31, Ex. 3).

Mt. Hawley Insurance Company issued the insurance policy in question to CFP shortly after Compass foreclosed on the Carlingford Apartments in February 2008. (Docket Entry No. 55, Ex. B). In September 2008, the property was damaged in Hurricane Ike. In 2009, Asset Resolution, CFP's sole member and manager, executed a document stating that it assigned to Kildare the right to pursue claims under the insurance policy. Kildare initiated the present suit against Mt. Hawley in 2011.[1] Mt. Hawley previously moved for summary judgment on Kildare's claims, arguing that

---

[1] Kildare was joined in the original suit by International, a company that held a 2007 note and deed of trust requiring the previous owners of the Carlingford Apartments to obtain insurance on the property and name the original holder of the deed of trust as a payee. This court also granted summary judgment against International's claims. (Docket Entry Nos. 16 and 50).

the policy's antiassignment clause prohibited the assignment of interest from CFP to Kildare. (Docket Entry No. 16).  This court granted summary judgment against Kildare. (Docket Entry No. 24).  This court also allowed CFP to intervene as a plaintiff to assert claims under the insurance policy.  (Docket Entry No. 43).

Mt. Hawley has now moved for summary judgment on CFP's claims.  (Docket Entry No. 53).  Mt. Hawley contends that CFP has no standing to assert a claim under the insurance policy because CFP assigned its interest to Kildare, and that CFP is judicially estopped from asserting that this assignment was invalid because it had previously represented to a bankruptcy court that the assignment was valid.  (Docket Entry No. 53 at 17–19).  CFP responds that the assignment to Kildare was invalid and that its statements to the bankruptcy court do not trigger judicial estoppel precluding it from arguing that it is entitled to pursue a claim against Mt. Hawley.  (Docket Entry No. 55 at 25–28).

The issues are whether the assignment to Kildare is valid as between Kildare and CFP, and whether CFP's representation to the bankruptcy court that its assignment was valid should estop it from arguing that the assignment is invalid here.  Both issues are addressed below.

## II.     The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial

burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (internal quotation marks omitted). "'If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response.'" *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and explain how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008). Nevertheless, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

**III**. **Analysis**

Resolving Mt. Hawley's summary-judgment motion turns on two legal questions: whether the Kildare assignment is effective as to CFP so as to preclude CFP's claims under the insurance policy; and whether CFP is judicially estopped from exercising its rights under the policy because it represented to the Nevada bankruptcy court that it had assigned its interest in the insurance policy to Kildare. CFP has objected to much of the evidence Mt. Hawley submitted in support of its summary-judgment motion. (Docket Entry No. 55 at 2–8). Because this court finds that the objected-to summary-judgment evidence, even if admitted, does not warrant granting summary judgment against CFP, it is not necessary to rule on each of CFP's evidentiary objections to decide the motion.

**A. Assignment of the policy to Kildare**

Mt. Hawley claims that the assignment of the insurance policy to Kildare is valid as between CFP and Kildare, and that it divested CFP of any interest that it might have had in the insurance policy. (Docket Entry No. 53 at 14–15). CFP argues that the antiassignment clause made the assignment to Kildare invalid. (Docket Entry No. 55 at 25–27), presenting several theories in support.

CFP first argues that because the assignment violated the policy's antiassignment clause, it is invalid and unenforceable, and did not effect any transfer of rights from the CFP to Kildare. (Docket Entry No. 55 at 27–28). This court previously granted summary judgment against Kildare based on the antiassignment clause. (Docket Entry No. 24). Mt. Hawley argues that this ruling

7

established that the assignment was voidable against Mt. Hawley but did not invalidate the assignment agreement as between CFP and Kildare. (Docket Entry No. 53 at 17–18). CFP argues that the ruling granting summary judgment against Kildare established that the assignment agreement was invalid. (Docket Entry No. 65 at 25).

The insurance policy's antiassignment clause stated: "Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured . . ." (Docket Entry No. 53, Ex. 1-A). This clause is valid and enforceable. "Anti-assignment clauses have been consistently enforced by Texas courts." *See Nautilus Ins. Co. v. Concierge Care Nursing Centers, Inc.*, 804 F. Supp. 2d 557, 559 (S.D. Tex. 2011) (internal quotation marks omitted); *Tex. Farmers Ins. Co. v. Gerdes*, 880 S.W. 2d 215, 218 (Tex. App.—Fort Worth 1994, writ denied). An insurer need not show prejudice to enforce an antiassignment clause even after a loss. *See Keller Foundations, Inc. v. Wausau Underwriters Ins. Co.*, 626 F.3d 871, 875–76 (5th Cir. 2010). "Texas courts uphold anti-assignment provisions so long as they do not interfere with the operation of a statute." *Choi v. Century Surety Co.*, No. H-10-528, 2010 WL 3825405, *4 (S.D. Tex. Sept. 27, 2010) (citing *Tex. Dev. Co. v. Exxon Mobil Corp.*, 119 S.W.3d 875, 880 (Tex. App.—Eastland 2003, no pet.) (citing *Reef v. Mills Novelty Co.*, 89 S.W.2d 210, 211 (Tex. 1936))).

Under Texas law, an assignment made in violation of an antiassignment clause is invalid and does not divest the assignor of its insurable interest or give the purported assignee a right to assert claims under the policy against the insurer. *See Conoco, Inc. v. Republic Ins. Co.*, 819 F.2d 120, 124 (5th Cir. 1987); *see also VT, Inc. v. Geico Gen. Ins. Co.*, No. 3:03-CV-0522, 2004 WL 1373132 (N.D. Tex. June 16, 2004), *mod. in part*, 2004 WL 2389450 (N.D. Tex. Oct. 22, 2004) ("The Court

rejects GEICO's argument that World Omni/VT lost its insurable interest, if any, when World Omni assigned the Policy to Autoflex. All parties agree the assignment was ineffective and void. It had no legal effect, and did not cause World Omni/VT to lose any rights under the Policy."). Antiassignment clauses make assignments of contractual rights invalid and unenforceable. *Texas Dev. Co. v. Exxon Mobil Corp.*, 119 S.W.3d 875, 881 (Tex. App.—Eastland 2003, no pet.). "If an anti-assignment clause is enforceable, any purported assignment in violation of the clause is invalid and the assignee may not rely on the assignment document to proceed directly against the insurer." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Puget Plastics Corp.*, 649 F. Supp. 2d 613, 623–24 (S.D. Tex. 2009) *aff'd,* 454 F. App'x 291 (5th Cir. 2011) (citing *Conoco,* 819 F.2d at 124 and *Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n,* 710 S.W.2d 551, 556 (Tex. 1986) (holding that "any attempted assignment, whether absolute or collateral, would be of no force and effect" if in violation of an antiassignment clause)).

In May 2009, CFP purported to assign to Kildare its interest in pursuing claims against Mt. Hawley for property damage caused by Hurricane Ike in September 2008. (Docket Entry 53, Exs. 2 and 4). Because Mt. Hawley did not give its written consent for such an assignment, the assignment to Kildare violated the policy's antiassignment clause. (Docket Entry No. 24). As a matter of Texas law, it was invalid and did not divest CFP of its rights under the policy. After executing the assignment agreement, CFP retained the same rights it originally had under the insurance policy, including the right to assert claims against Mt. Hawley for the 2008 hurricane damage to the Carlingford Apartments. None of these rights belonged to Kildare.

Because the assignment was invalid as a matter of Texas law, it is not necessary to consider CFP's allegations that the assignment was invalid as a matter of Nevada law, a violation of the Loan

Servicing Agreements, or voidable self-dealing. (Docket Entry No. 55 at 24–25). Nor is it necessary to consider CFP's arguments that Mt. Hawley lacks standing to enforce the assignment agreement between Kildare and CFP, or that Mt. Hawley is equitably estopped from asserting that the assignment is invalid. (Docket Entry No. 55 at 27–30).

### B. Judicial Estoppel

Mt. Hawley also moves for summary judgment on the basis of CFP's conduct in the bankruptcy proceedings. (Docket Entry 53 at 18–25). Mt. Hawley argues that CFP's representation to bankruptcy courts in New York and Nevada that it had no assets and that it had assigned its insurance claim to Kildare, and the bankruptcy courts' subsequent acceptance of these representations, precludes CFP from now asserting that the assignment to Kildare was invalid and without effect. (*Id.*). CFP responds that its statements to the New York and Nevada bankruptcy courts do not give rise to judicial estoppel. It also argues that Mt. Hawley is equitably estopped from asserting judicial estoppel against CFP. (Docket Entry No. 55 at 29–39). Dirty-handed accusations abound.

Judicial estoppel is "a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position." *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988). The purpose of the doctrine is "to protect the integrity of the judicial process" by "prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest." *Id.* (internal marks omitted). Because the doctrine is intended to protect the judicial system, rather than the litigants, detrimental reliance on the challenged statement or action is not necessary. *See Matter of Cassidy*, 892 F.2d 637, 641 & n.2 (7th Cir. 1990), *cert. denied*, 498 U.S. 812 (1990). "The policies underlying the doctrine include preventing internal

inconsistency, precluding litigants from playing fast and loose with the courts, and prohibiting parties from deliberately changing positions according to the exigencies of the moment." *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993). The doctrine applies when "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Scarano v. Central R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953).

The Bankruptcy Code and Rules impose on bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims. *In re Coastal Plains, Inc.*, 179 F.3d 197 (5th Cir. 1999); 11 U.S.C. § 521(1) ("The debtor shall—(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs"). "The duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action." *Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n*, 932 F. Supp. 859, 867 (E.D. Tex. 1996). "'The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed.'" *Id.* (brackets omitted; quoting *Union Carbide Corp. v. Viskase Corp. (In re Envirodyne Indus., Inc.)*, 183 B.R. 812, 821 n. 17 (Bankr. N.D. Ill. 1995)). "Any claim with potential must be disclosed, even if it is 'contingent, dependent, or conditional.'" *Id.* (quoting *Westland Oil Dev. Corp. v. MCorp Management Solutions, Inc.*, 157 B.R. 100, 103 (S.D. Tex. 1993)); *see also In re Superior Crewboats, Inc.*, 374 F.3d 330 (5th Cir. 2004).

The Fifth Circuit recognizes three requirements for judicial estoppel: "(1) the party is judicially estopped only if its position is clearly inconsistent with the previous one; (2) the court

11

must have accepted the previous position; and (3) the non-disclosure must not have been inadvertent." *In re Superior Crewboats*, 374 F.3d at 335 (citing *Scarano*, 203 F.2d at 513). Mt. Hawley claims that CFP's present position is clearly inconsistent with the declarations CFP made in the New York bankruptcy court and in 6425 Gess's motion to dismiss the bankruptcy proceeding filed in the Nevada bankruptcy court. (Docket Entry No. 53 at 20–22). The Schedule of Assets submitted by Asset Resolution for CFP stated that CFP had no assets. CFP now argues that this insurance claim was not listed because Asset Resolution and CFP reasonably believed that the claim had been assigned to Kildare or was vested with International, and because all of the assets of CFP were held in trust for the benefit of the direct lenders and were therefore not part of the bankruptcy estate. (Docket Entry No. 55 at 34–35). Mt. Hawley also argues that the bankruptcy court accepted CFP's assertions that the claim had been assigned in dismissing the bankruptcy. (Docket Entry No. 53 at 23). CFP responds that the New York bankruptcy court did not accept its Schedule of Assets. (Docket Entry No. 55 at 36). CFP also argues that the Nevada bankruptcy court's order specifying that CFP's assets were held in trust for the direct lenders and were therefore not part of CFP's bankruptcy estate, and the bankruptcy court's subsequent dismissal of the bankruptcy petition, shows that CFP was not required to disclose the insurance claim as an asset. (Docket Entry No. 55 at 36).

Even if CFP's prior failure to disclose the present claim as an asset was inconsistent with its present position, and even if the New York and Nevada bankruptcy courts had relied on that information, the summary-judgment evidence provides no basis for an inference that CFP intentionally used self-contradiction for unfair advantage or changed positions "according to the exigencies of the moment." Although CFP did not include the insurance claim in its schedule of

assets, its other filings to the New York and Nevada bankruptcy courts make clear that CFP reasonably and in good faith believed that this claim was either Kildare's or International's. (Docket Entry Nos. 53, Ex. 4; 55, Ex. B). CFP did not conceal the details of the insurance claim from the bankruptcy courts. In 6425 Gess's motion to dismiss the bankruptcy petition, it informed the Nevada bankruptcy court that there was an insurance claim against Mt. Hawley related to damage from the 2008 hurricane, that a civil action was pending on that claim, that CFP had assigned the interest to Kildare, and that CFP sought to pursue the claim jointly with Kildare and International. (Docket Entry Nos. 53, Ex. 4; 55, Ex. B).

This court is satisfied that CFP's positions resulted not from an intention to mislead the courts, but from the understandable confusion over the legal effect of the assignment agreement between CFP and Kildare. That assignment has been the subject of litigation in this court since 2011. Because this court finds that CFP's assertion of an inconsistent position does not meet the requirements to trigger judicial estoppel, it declines to apply the doctrine against CFP.

## IV.     Conclusion and Order

Mt. Hawley's motion for summary judgment, (Docket Entry No. 55), is denied. The motion to supplement the summary-judgment record, (Docket Entry No. 121), is granted. CFP's motion to extend the amount of time for it to offer additional evidence, (Docket Entry No. 143), is denied as moot. Docket call is set for **October 3, 2014, at 1:30 p.m.**

SIGNED on September 11, 2014, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge